USDC SCAN INDEX SHEET

















JAH    10/5/04    11:36
3:04-CV-01378    HEMOCUE AB V. STANBIO LABORATORY
*12*
*REQJNTC.*

1   Callie A. Bjurstrom, State Bar No. 137816
    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
2   600 West Broadway, Suite 2600
    San Diego, California 92101-3372
3   Telephone No.: 619.236.1414
    Fax No.: 619.232.8311
4

5   Attorneys for Defendant Stanbio Laboratory, L.P.

6

7

8                   UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  HEMOCUE AB; HEMOCUE, INC.,              Case No. 04CV1378 BEN (AJB)

12                                          REQUEST FOR JUDICIAL NOTICE IN
              Plaintiffs,                   SUPPORT OF DEFENDANT STANBIO
13                                          LABORATORY, L.P.'S MOTION TO
    v.                                      DISMISS, TRANSFER AND/OR STAY
14
    STANBIO LABORATORY, L.P.; EKF -
15  DIAGNOSTIC GMBH,                        Date:    April 22, 2005
                                            Time:    10:30 a.m.
16            Defendants.                   Ctrm.:   3
                                            Judge:   Honorable Roger T. Benitez
17

18

19          TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

20          PLEASE TAKE NOTICE that pursuant to Federal Rule of Evidence 201 and federal law,

21  defendant Stanbio Laboratory, L.P. ("Stanbio") hereby requests this Court to take judicial notice

22  of the materials that are attached as exhibits hereto in support of Stanbio's motion to dismiss,

23  transfer and/or stay as follows:

24          1.      Stanbio requests that the Court take judicial notice of the Complaint filed in the

25  United States District Court for the Western District of Texas, San Antonio Division, Civil Action

26  No. SA-03-CA1080 OG (NN), Stanbio Laboratory, L.P. v. Hemocue, Inc., et al., attached as

27  Exhibit A.

28  ///

                                            1                   Case No. 04CV1378 BEN (AJB)

1          2.      Stanbio requests that the Court take judicial notice of the following pleadings in the

2   United States District Court for the Western District of Texas, San Antonio Division, Civil Action

3   No. SA-03-CA1080, <u>Stanbio Laboratory L.P. v. Hemocue, Inc., et al.</u>:

4                  (a) Memorandum and Recommendation of the United States Magistrate Judge

5   dated September 3, 2004, and Order Accepting Recommendation of Magistrate Judge, dated

6   September 29, 2004, attached hereto as Exhibit B.

7                  (b) Affidavit   of   Berthold   Walter,   General   Manager   of   EKF,   dated

8   January 27, 2004, filed in opposition to Hemocue's motion to dismiss for lack of a controversy,

9   attached hereto as Exhibit D.

10         3.      Stanbio   requests   that   the   Court   take   judicial   notice   of   the   Complaint   for

11  Declaratory Judgment, filed in the United States District Court for the Western District of Texas,

12  San Antonio Division Civil Action No. SA-04-CA0807 XR, <u>EKF-Diagnostic Sales v. Hemocue</u>

13  <u>AB, et al.</u>, attached hereto as Exhibit C.

14       A court may take judicial notice of pleadings filed in another action.  <u>See EEOC v.</u>

15  <u>Tortilleria "La Mejor"</u> 758 F.Supp 585, 591 (E. D. Cal. 1991).

16  DATED: October ⅃, 2004          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

17

18                                By: _____

19                                    Callie A. Bjurstrom
                                      Attorneys for Defendant Stanbio Laboratory, L.P.

20

21  2003962.1

22

23

24

25

26

27

28

                                      2                    Case No. 04CV1378 BEN (AJB)



IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STANBIO LABORATORY, L.P., | § | |
| A Texas Limited Partnership | § | |
| Plaintiff, | § | SA03CA1080 OG |
| v. | § | Civil Action No. _____ |
| HEMOCUE, INC. and | § | |
| HEMOCUE AB | § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT

Plaintiff complains of Defendants as follows:

### I.

### PARTIES

1.    Plaintiff, Stanbio Laboratory, L.P. ("Stanbio") is a limited partnership organized under the laws of the state of Texas, with its principal place of business in Boerne, Texas, San Antonio Division of the Western District of Texas.

2.    Defendant Hemocue, Inc. is a California corporation with its principal place of business in Lake Forest, California.

3.    Defendant Hemocue AB is a Swedish corporation with its principal place of business in Ängelholm, Sweden.

### II.

### JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because it is a civil action arising under the laws of the United States, namely, 35 U.S.C. § 271.

5.    This Court has personal jurisdiction over the Defendants since Defendants have sufficient contact with this State and, in particular, this Judicial District, and maintenance of the suit

EXHIBIT A
PAGE 1 OF 4

in this Judicial District does not offend traditional notions of fair play and substantial justice. Venue is proper in this District pursuant to 28 U.S.C § 1391. A substantial part of Plaintiff's claims arise in this Judicial District.

## III.

## FACTS

6.    Stanbio markets clinical diagnostic products, including microcuvettes. EKF-Diagnostic GmbH has manufactured and delivered to Stanbio in the U.S.A. certain microcuvettes.

7.    United States Patent No. 5,674,457 (" the '457 Patent") for a Capillary Microcuvette was issued to Williamsson et al. on October 7, 1997 and assigned the HEMOCUE AB of Sweden.

8.    On information and belief, Hemocue, Inc. is the exclusive licensee under the '457 Patent.

9.    Hemocue AB and Hemacue, Inc. manufacture and market medical diagnostic products for point-of-care testing, including Texas and this Judicial District, the products including microcuvettes allegedly protected by the '457 Patent.

10.    On information and belief, Hemocue AB and Hemocue, Inc. and/or entities authorized to assert rights under the '457 Patent believe and have asserted that certain EKF-Diagnostic GmbH microcuvettes offered or to be offered for sale by Stanbio and Stanbio's distributors infringe the '457 Patent and have threatened litigation against Stanbio and Stanbio's distributors for the alleged infringement.

11.    Stanbio has a reasonable apprehension of being sued by Henocue AB and Hemocue, Inc. for infringement of the '457 Patent.

EXHIBIT A
PAGE 2 OF 4

## IV.

## DECLARATORY JUDGMENT

12.    As set forth above, an actual existing and bona fide controversy exists between Stanbio and Hemocue AB and Hemocue, Inc. concerning the '457 Patent, including its scope and its validity.

13.    Stanbio seeks a declaratory judgment that Stanbio's microcuvettes do not infringe the '457 Patent.

14.    Stanbio seeks a declaratory judgment that the '457 Patent is invalid.

15.    Stanbio seeks declaratory judgment that its sale and offering to sell its products is lawful.

## V.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Stanbio requests judgment against Defendants for the following:

a.    Judgment that Stanbio's microcuvettes do not infringe U.S. Patent No. 5,674,457;

b.    Judgment that U.S. Patent No. 5,674,457 is invalid;

c.    Judgment that its sale and offering to sell its products is lawful; and

d.    Such other and further relief to which Stanbio is entitled.

## JURY DEMAND

Plaintiff respectfully requests trial by jury.

Respectfully submitted,

JACKSON WALKER L.L.P.
112 East Pecan Street, Suite 2100
San Antonio, Texas 78205-1521
(210)978-7700
(210)978-7790 (facsimile)

3

EXHIBIT A
PAGE 3 OF 4

By:

_____

Mark H. Miller
State Bar No. 14099200
Michael A Moreno
State Bar No. 24039072

**ATTORNEYS FOR STANBIO
LABORATORY, L.P.**

EXHIBIT A
PAGE 4 OF 4

FILED

SEP 2 9 2004

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS,
### SAN ANTONIO DIVISION

STANBIO LABORATORY, L.P.,    §
A Texas Limited Partnership,    §
         Plaintiff,    §
              §
v.                         §        CAUSE NO. SA-03-CA-1080-OG
              §
HEMOCUE, INC., and HEMOCUE AB,    §
         Defendants.    §

### ORDER ACCEPTING RECOMMENDATION OF MAGISTRATE JUDGE

     Before the Court are the memorandum and recommendation of United States Magistrate

Judge Nancy Stein Nowak (docket no. 30), and the objections of defendants HemoCue, Inc. and

HemoCue AB (docket no. 31). The Court has conducted an independent review of the record, a

*de novo* review of the matters raised by the objections, and has reviewed the applicable law. See

28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

     The Court concludes that the totality of the circumstances support a finding that Stanbio

had an objectively reasonable apprehension of litigation from defendants when it filed this suit.

See State of Tex. v. West Pub. Co., 882 F.2d 171, 175 (5th Cir. 1989) (Fifth Circuit applies a

two-prong test to determine whether an actual controversy exists in a declaratory judgment action

involving copyright infringement: (1) whether the plaintiff has a real and reasonable

apprehension of litigation, and (2) whether the plaintiff has engaged in a course of conduct that

brings it into adversarial conduct with the defendant).

     Defendants assert that there is no evidence that they threatened EKF with "patent

infringement" regarding the cuvettes imported and sold by Stanbio. However, the exact words

Mr. Runnberg of HemoCue spoke to Mr. Walter of EKF are not the deciding issue. As

*32*

defendants point out so many times, it is what Stanbio knew that is relevant. And the evidence shows that Mr. Walter told Mr. Pippin of Stanbio that HemoCue was likely to sue Stanbio for infringing the patent and that "it is a fact that HemoCue will take legal proceedings against Stanbio." Mr. Walter was passing along a litigation threat directly from HemoCue. Such an express threat alone should be enough to instill in Stanbio a real and objective apprehension that it would be sued by defendants.

Defendants also argue that knowledge of a foreign opposition, in this case the one filed by Bio-Test, is not a proper factor in determining whether a plaintiff has a reasonable apprehension of being sued. The weight of authority, however, supports the magistrate judge's conclusion. See CyberOptics Corp. v. Yamaha Motor Co., Ltd., Civ. No. 3-95-1174, 1996 WL 673161, *14-15 (D. Minn., July 29, 1996) and the cases there cited.

Defendants argue that there is no evidence that defendants "suspiciously warned" their employees not to mention possible legal actions against Stanbio or that even if they did, there is no evidence that Stanbio knew about the warnings. They also argue that there is no evidence that Stanbio knew of the conversations between HemoCue & PSS cited at pages 12-13 of the memorandum and recommendation. Even if we grant defendants the benefit of the doubt on these "no evidence" arguments, the warning from Mr. Walter and defendants' vigorous defense of Bio-Test's opposition against HemoCue's patent, which included defendants' expenditure of millions of dollars to acquire its competitor Bio-Test, confirmed that defendants would aggressively protect their patents and marketshare, and gave Stanbio a real and objective apprehension that it would be sued by defendants.

The Court concludes that defendants' objections lack merit, and they are OVERRULED.

2

The memorandum and recommendation is ACCEPTED. It is further ORDERED that

defendants' motion to dismiss (docket no. 6) is DENIED.

SIGNED this 29 day of Sept , 2004.

ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE

3

EXHIBIT B

PAGE 3 OF 18

*4/3*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

STANBIO LABORATORY, L.P.,  §
A Texas Limited Partnership,  §
 §
     **Plaintiff,**  §  **CIVIL ACTION NO.**
 §
v.  §
 §  **SA-03-CA-1080 OG (NN)**
HEMOCUE, INC. and  §
HEMOCUE AB,  §
 §
     **Defendants.**  §

## MEMORANDUM AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

TO: **Hon. Judge Orlando Garcia**
  **United States District Judge**

### *I. Introduction*

The matter before the court is the motion to dismiss brought by defendants HemoCue,

Inc. and HemoCue AB (hereafter "HemoCue defendants" or "defendants").[1] The motion seeks

dismissal of all the claims contained in plaintiff's complaint on the basis that this court lacks

jurisdiction over the matter because there is no justiciable controversy between the parties.

Plaintiff's complaint in federal court alleges that plaintiff imports and sells clinical

diagnostic products, including microcuvettes produced by a competitor of the HemoCue

defendants.[2] The HemoCue defendants hold a patent on their microcuvette technology. The

---

[1] Docket Entry 6.

[2] Docket Entry 1.

1

*30*

**EXHIBIT B**

**PAGE 4 OF 18**

complaint avers that plaintiff has a reasonable apprehension of being sued by the HemoCue

defendants for infringement of their patent (known as the '457 patent) on a capillary

microcuvette.[3]  For this reason, plaintiff's federal court complaint "seeks a declaratory judgment

that Stanbio's microcuvettes do not infringe the '457 Patent . . .that the '457 Patent is invalid . . .

[and] that [Stanbio's] sale and offering to sell its products is lawful."[4]

 Having reviewed the entire record in this case, including the arguments and evidence

raised by defendants in support of dismissal,[5] the arguments and evidence submitted by plaintiff

through its replies to defendants' motions,[6] and the applicable case and statutory law, I hereby

recommend that defendants' motion to dismiss be **<u>DENIED</u>**.  Plaintiff has met its burden of

proving that this court has jurisdiction over the instant action.

 I have jurisdiction to enter this Memorandum and Recommendation under 28 U.S.C.

§ 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for

disposition by order, or to aid in their disposition by recommendation where my authority as a

Magistrate Judge is statutorily constrained.[7]

## *II. Statement of the Case*

 The HemoCue defendants are the manufacturers of microcuvettes which allow for quick

hemoglobin testing.  From approximately 1976 to 1996, the HemoCue defendants' microcuvette

---

[3] Docket Entry 1.

[4] Docket Entry 1, ¶¶ 13-15, at 3.

[5] Docket Entries 6, 7, 15, 19, and 28.

[6] Docket Entries 11, 12, 13, 21, and 27.

[7] Docket Entry 10.

2

technology was protected – and under the HemoCue defendants' exclusive control – by virtue of United States Patent No. 4,088,448 ("the '448 patent'"). The '448 patent expired in 1996.

Plaintiff Stanbio imports and sells microcuvettes for quick hemoglobin testing. The microcuvettes sold by plaintiff are manufactured by EKF Diagnostic GmbH ("EKF"). The EKF microcuvettes are based on the technology which was formerly protected by the '448 patent.

According to plaintiff, the HemoCue defendants made a very minor change to their microcuvettes when the '448 patent expired in 1996. Defendants contend that the change made was substantial. The HemoCue defendants sought to protect this "new" or "altered" microcuvette technology by virtue of United States Patent No. 5,674,457 ("the '457 patent'") and European Patent No. 821,784 ("the '784 patent'").

After the '448 patent expired, Bio Test Medizintechnik GmbH ("Bio Test"), a European company, began producing microcuvettes based on the '448 patent technology. Bio Test filed papers with the European Patent Office to invalidate the '784 patent. After the European Patent Office initially invalidated the '784 patent, the HemoCue defendants purchased Bio Test. Thereafter, the HemoCue defendants were able to get the European Patent Office to reverse its previous decision and reinstate the '784 patent. The HemoCue defendants allege that the European Patent Office's reversal was based entirely on the original arguments presented by both Bio Test and the HemoCue defendants.[8]  In contrast, plaintiff contends that the European Patent

---

[8] Defendants have submitted the affidavit of Nicolaus Preissner, the German patent attorney who represented HemoCue AB in the opposition filed in the European Patent Office by Biotest. Docket Entry 15, Exhibit 4. Mr. Preissner states, "under the European Patent Convention the (*sic*) Board of Appeal was obligated to issue a final decision based on the arguments and evidence presented by the parties even though Biotest withdrew the opposition before a final decision was made." Docket Entry 15, Exhibit 4, ¶ 3. Mr. Preissner further opines, "The fact that Biotest had withdrawn it's (*sic*) opposition had no effect from what I could tell on the Board of Appeal's final decision." Docket Entry 15, Exhibit 4, ¶ 4.

3

Office reversed its previous decision because Bio Test withdrew its previous filings once it had

been acquired by the HemoCue defendants. Plaintiff further avers that the HemoCue defendants

were able to sue on the '457 patent only after the '784 patent was reinstated in June 2003.

Plaintiff commenced the instant action on October 29, 2003.[9] The HemoCue defendants

now move to dismiss the action on the basis that there is no justiciable controversy, and

therefore, no jurisdiction.[10] Defendants claim jurisdiction is wanting because plaintiff had no

reasonable apprehension of being sued at the time it filed this lawsuit.

On July 13, 2004, several months after the HemoCue defendants' motion to dismiss had

been pending, plaintiff filed a Notice of Additional Suit with this court.[11] In that advisory,

plaintiff notified the court that the HemoCue defendants had initiated an action in the United

States District Court for the Southern District of California against plaintiff and EKF. That

action is styled: **HemoCue AB; HemoCue, Inc. v. Stanbio Laboratory, L.P.; EKF-Diagnostic**

**GmbH**.[12] Plaintiff argues that the action pending in California establishes that there was and is

an actual controversy between the parties because plaintiff's apprehension of litigation was

clearly reasonable.[13] The HemoCue defendants strenuously counter that any action taken after

the instant suit was filed cannot constitute factual support for asserting jurisdiction because

plaintiff must establish that its apprehension of litigation was reasonable at the time the action

---

[9] Docket Entry 1.

[10] See, generally Docket Entry 6.

[11] Docket Entry 27.

[12] Id.

[13] Docket Entries 27, 29.

4

EXHIBIT B

PAGE 7 OF 18

was filed.[14]

### III. Issue Presented

Whether a justiciable controversy exists between the parties such that this court has

jurisdiction over this action?

### IV. Applicable Legal Standards

A.    *Federal Rule of Civil Procedure 12(b)(1)*

Defendants have brought their motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(1). Under Rule 12(b)(1), a plaintiff's claim must be dismissed when the court

lacks jurisdiction over the subject matter of that claim.[15] In particular, Rule 12(b)(1) requires the

dismissal of a case for want of subject matter jurisdiction when the district court lacks the

statutory and constitutional power to adjudicate the case.[16] A district court may dismiss a case

for want of subject matter jurisdiction on any one of three different bases: (1) the complaint

alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint

supplement by undisputed facts plus the court's resolution of disputed facts.[17]

B.    *Overview: 28 U.S.C. § 2201 and actions for declaratory relief concerning patents*

Courts are prohibited from issuing advisory opinions, i.e. opinions that adjudicate a non-

---

[14] Docket Entry 28.

[15] FED.R.CIV.P. 12(b)(1).

[16] *See* Home Builders Association of Mississippi, Inc., v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).

[17] *See* Clark v. Tarrant County, 798 F.2d 736, 741 (5th Cir. 1986) (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.), cert. denied, 454 U.S. 897 (1981)).

5

existent claim or speculate on the proper outcome of a fictional dispute.[18] In order to protect

parties that might suffer the perilous consequences of waiting for an adverse party to sue,

however, Congress enacted a statute which confers authority on district courts to adjudicate the

rights of an interested party. Specifically, 28 U.S.C. § 2201(a) provides:

> In a case of actual controversy within its jurisdiction . . . any court
> of the United States, upon the filing of an appropriate pleading,
> may declare the rights and other legal relations of any interested
> party seeking such declaration, whether or not further relief is or
> could be sought. Any such declaration shall have the force and
> effect of a final judgment or decree and shall be reviewable as
> such.[19]

As interpreted by the Supreme Court, the question surrounding actions for declaratory

relief

> 'is whether the facts alleged, under all the circumstances, show that
> there is a substantial controversy, between parties having adverse
> legal interests, of sufficient immediacy and reality to warrant the
> issuance of a declaratory judgment.'[20]

---

[18] See Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735 (Fed.Cir. 1988).

> Plaintiff may not, for example, obtain a declaratory judgment merely because it
> would like an advisory opinion on whether it would be liable for patent
> infringement if it were to initiate some merely contemplated activity.
> Arrowhead Industrial Water, Inc., 846 F.2d, at 736.

[19] 28 U.S.C. § 2201(a). See also BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 977
(Fed.Cir.1993):

> The purpose of the Act is to enable a person who is reasonably at legal risk
> because of an unresolved dispute, to obtain judicial resolution of that dispute
> without having to await the commencement of legal action by the other side. It
> accommodates the practical situation wherein the interests of one side to the
> dispute may be served by delay in taking legal action.

[20] Arrowhead Industrial Water, Inc., 846 F.2d, at 735, quoting Maryland Casualty Co. v. Pacific Coal
& Oil Co., 312 U.S. 270, 273. See also Dewey & Almy Chem. Co. v. American Anode, Inc., 137 F.2d 68, 70 (3rd
Cir. 1943)(internal citations omitted):

> There must be a concrete case touching the legal relations of parties having
> adverse legal interests, and susceptible 'of an immediate and definitive
> determination of the legal rights of the parties in an adversary proceeding upon

6

Although an "actual controversy" is a mandatory prerequisite for declaratory relief,[21] the Fifth

Circuit has held that the declaratory relief act "is remedial and is to be liberally construed to

achieve its wholesome and salutary purpose."[22]

In order to establish an actual controversy in an action for declaratory judgment

concerning a patent,

> the plaintiff has the burden of establishing by a preponderance of
> the evidence, *inter alia*, that it has a reasonable apprehension that it
> will be sued.[23]

A party's reasonable apprehension that it will be sued is measured by the objective,[24] two

pronged test articulated in <u>Goodyear Tire & Rubber Co. v. Releasomers, Inc.</u>:

> 'First, the defendant's conduct must have created on the part of the
> plaintiff a reasonable apprehension that the defendant will initiate
> suit if the plaintiff continues the allegedly infringing activity.
> Second, the plaintiff must actually have either produced the device
> or have prepared to produce the device.'[25]

The "first prong looks to defendant's conduct; [the] second to that of plaintiff." Importantly, the

test "is applied to the facts existing when the complaint is filed"[26] and must be "evaluated on a

---

the facts alleged.'

[21] 28 U.S.C. § 2201(a); <u>Shell Oil Co. v. Amoco Corp.</u>, 970 F.2d 885, 887 (Fed.Cir. 1992), "An actual controversy must be present before a declaratory judgment action is ripe for adjudication."

[22] <u>Allstate Insurance Co. v. Employers Liability Assurance Corp., Ltd.</u>, 445 F.2d 1278, 1280 (5th Cir. 1971).

[23] <u>Shell Oil Co.</u>, 970 F.2d, at 887.

[24] <u>Id.</u>, at 888.

[25] <u>Shell Oil Co.</u>, 970 F.2d, at 888, n. 2, *quoting* <u>Goodyear Tire & Rubber Co. v. Releasomers Inc.</u>, 824 F.2d 953, 955 (Fed.Cir. 1987).

[26] <u>Arrowhead Industrial Water, Inc.</u>, 846 F.2d, at 736.

7

claim-by-claim basis."[27]  When the defendant disputes the existence of an actual controversy,

"the declaratory plaintiff must prove the existence of facts underlying such allegations."[28]  As

with all motions to dismiss, however, factual conflicts must be resolved in plaintiff's favor

provided plaintiff has proffered competent evidence to support its version of the facts.[29]

     The first prong of the **Goodyear** test assesses the defendant's conduct.  Defendant's

actions "must be such as to indicate defendant's intent to enforce its patent."[30]  Express charges

of infringement are not required for a plaintiff to establish a reasonable apprehension of

litigation.[31]  Moreover, a "reasonable apprehension may be found in the absence of *any*

communication from defendant to plaintiff."[32]  When an express charge of infringement has not

occurred, the court is required to look at the totality of the circumstances to determine if,

objectively, the plaintiff had a reasonable fear of suit.[33]  Factors which may weigh in favor of

plaintiff's assertion that it reasonably feared litigation are: (1) related litigation by the defendant

on the patent at issue;[34] (2) a defendant's consistent pattern of vigorously defending its patent(s);

and (3) implied threats of litigation.  The fact that another party has obtained a patent, without

---

[27] **Jervis B. Webb Co. v. Southern Systems, Inc.**, 742 F.2d 1388, 1399 (Fed.Cir. 1984).

[28] **Id.**, 742 F.2d, at 1399.

[29] *See* **Brown v. Flowers Industries, Inc.**, 688 F.2d 328, 333 (5th Cir. 1982).

[30] **Arrowhead Industrial Water Inc.**, 846 F.2d, at 736.

[31] **Shell Oil Co.**, 970 F.2d, at 888.

[32] **Arrowhead Industrial Water, Inc.**, 846 F.2d, at 736, *citing* **Dewey & Almy Chem. Co. v. American Anode, Inc.**, 137 F.2d 68, 71 (3rd Cir. 1943).

[33] **Shell Oil Co.**, 970 F.2d, at 888.

[34] **Shell Oil Co.**, 970 F.2d, at 888.

8

more, cannot establish a reasonable apprehension of suit.[35]

The second prong of the **Goodyear** test looks at the plaintiff's conduct. Plaintiff's actions "must be such as to establish that plaintiff has a true interest to be protected by the declaratory judgment."[36] A plaintiff is not required to admit infringement to satisfy the second prong.[37] Rather,

> declaratory judgment plaintiffs who have been accused of
> infringement or threatened with suit are at full liberty to deny
> infringement . . . They are at liberty, also, to admit infringement
> while asserting that the patent is invalid and that no liability for the
> infringement can therefore exist.[38]

So long as plaintiff has "actually produced" or has "actually prepared to produce" a potentially infringing device "at the time it filed its declaratory judgment" action, the plaintiff's conduct will satisfy the second prong of the **Goodyear** test.[39]

### V. Analysis

In the instant case, the second prong of the **Goodyear** test is not at issue. Both parties agree that plaintiff's activities in importing and/or selling EKF microcuvettes might constitute infringement if the HemoCue defendants' '457 patent is valid. Thus, the only issue before the court is whether the HemoCue defendants' conduct created an objectively reasonable

---

[35] **Arrowhead Industrial Water Co.**, 846 F.2d, at 736. **See also BP Chemicals Ltd. v. Union Carbide Corp.**, 4 F.3d 975, 978 (Fed.Cir. 1993), "for an actual controversy more is required than the existence of an adversely held patent."

[36] **Arrowhead Industrial Water Co.**, 846 F.2d, at 736.

[37] **Internat'l Medical Prosthetics Research Associates, Inc. d/b/a IMPRA v. Gore Enter. Holdings, Inc.**, 787 F.2d 572, 575 (Fed.Cir.1986).

[38] **Id.**

[39] **Jervis B. Webb Co.**, 742 F.2d, at 1399.

9

apprehension of litigation for plaintiff.

Defendants strenuously assert that plaintiff did not have a reasonable apprehension of litigation. Defendants argue that they never made express charges that plaintiff's or EKF's actions infringed on the patent nor did they ever threaten litigation.[40] In fact, defendants have proffered the affidavits of four high ranking HemoCue AB and HemoCue, Inc. employees that all the employees of both companies were under strict instructions not to mention any possible infringement action or litigation against plaintiff because the HemoCue defendants had not yet undergone the expensive and complicated process of determining whether the EKF/Stanbio microcuvettes infringed a HemoCue patent.[41] The affiants further stated that, to their knowledge, no employees had many any such threats.[42]

In opposition to the motion to dismiss, plaintiff argues that defendants have an established practice of vigorously defending their patents. Plaintiff submits that proof of defendants' behaviors include, *inter alia*: (1) defendants' purchase of Bio Test after Bio Test began producing cuvettes based on HemoCue technology; (2) threats made to Physician Sales and Service ("PSS"), a company that attempted to negotiate with plaintiff to distribute EKF cuvettes; and (3) threats of litigation made to Berthold Walter, the General Manager of EKF.[43]

---

[40] See Docket Entry 6, at 1-2.

[41] See Affidavit of Anders Williamsson, President of HemoCue AB, Docket Entry 6, Exhibit 2, at ¶¶ 3, 5, 6; Affidavit of Donald DuBois, General Manager of HemoCue, Inc., Docket Entry 6, Exhibit 3, ¶¶ 3, 5, 6; Affidavit of Charles Neff, National Sales Manager for HemoCue, Inc., Docket Entry 6, Exhibit 4; Affidavit of Clas Runnberg, Directory of Marketing and Business Development of HemoCue AB, Docket Entry 15, Exhibit 2, ¶ 3. See also Docket Entry 7.

[42] Id.

[43] See generally Docket Entry 11.

10

Plaintiff further asserts that the HemoCue defendants' specific "gag" instructions to its employees about any possible legal action against plaintiff was a charade that proves defendants' intention to pursue legal action. Finally, plaintiff contends that the fact that defendants recently filed a suit for patent infringement against plaintiff and EKF conclusively establishes that plaintiff's apprehension of litigation was reasonable.[44]

In support of these propositions, plaintiff has provided several affidavits, as well as excerpts from the deposition testimony of Brett Stromatt, the Business Segment Manager for Waived Products for Physician Sales and Service ("PSS"). For example, plaintiff submitted the affidavit of Berthold Walter, the General Manager of EKF.[45] In his affidavit, Mr. Walter recounted a telephone conversation he had with Mr. Runnberg of HemoCue AB about EKF's preparations to enter the U.S. market with its own microcuvettes. Mr. Runnberg told Mr. Walter, "'should your entry into the U.S. reach a point where it could constitute an infringement of HemoCue's patent rights, we [HemoCue] will take all steps necessary and relevant to protect our rights . . .'"[46] After Mr. Walter's conversation with Mr. Runnberg, Mr. Walter warned plaintiff that, "'It is a fact that HemoCue will take proceedings against Stanbio. The reason is the enclosed patent.'"[47] In his declaration, defendants' own Mr. Runnberg confirmed Mr. Walter's statements by stating:

> Although I might have said that it is likely that EKF's cuvettes infringe HemoCue's patent, I always qualified that statement by

---

[44] Id.

[45] Docket Entry 11, Exhibit A.

[46] Docket Entry 11, Exhibit A, ¶ 4(b).

[47] Docket Entry 11, Exhibit A, ¶ 8; Docket Entry 11, Exhibit A, Exhibit 2.

11

telling Mr. Walter that HemoCue had not made such a
determination.[48]

Similarly, Mr. Anders Williamsson, the President of HemoCue AB, stated in his affidavit

that he told Mr. Walter

> generally that if HemoCue should determine in the future that
> EKF's microcuvettes infringed the '457 patent, HemoCue would
> take whatever legal action is appropriate.[49]

Plaintiff has also provided excerpts from the deposition of Brett Stromatt.[50]  On behalf of

his employer PSS, Mr. Stromatt was considering distributing plaintiff's/EKF's cuvettes.  Mr.

Stromatt testified that Charles Neff, the National Sales Manager for HemoCue, Inc., warned him

that if PSS was going to market EKF cuvettes, PSS had better get "a hell of a lot of

indemnification" from Stanbio.[51]  Based on more than two dozen conversation he had with Mr.

Neff, during which Mr. Neff constantly reasserted the viability of the HemoCue patents on the

cuvettes and PSS' need for indemnification from Stanbio, Mr. Stromatt concluded that PSS

could be at risk if it sold Stanbio/EFK microcuvettes.  For this reason, Mr. Stromatt warned his

superiors about the threats of litigation.[52]  Mr. Stromatt further testified that no other vendor had

so constantly asserted the viability of their patents or constantly reminded him to obtain

indemnification.[53]

---

[48] Docket Entry 15, Exhibit 2, ¶ 3.

[49] Docket Entry 6, Exhibit 2, ¶ 4.

[50] Docket Entry 13, Exhibit G.

[51] Docket Entry 13, Exhibit G, at 45.

[52] Docket Entry 13, Exhibit G.

[53] Id.

12

In reply, defendants also submitted portions of Mr. Stromatt's deposition testimony.[54] In the excerpt of Mr. Stromatt's deposition testimony provided by defendants, counsel asked Mr. Stromatt directly if defendants had ever threatened him with an infringement suit. In response to this question, Mr. Stromatt answered, "No."[55] Mr. Stromatt also testified that obtaining indemnification was a customary and wise business practice.

Importantly, Mr. Stromatt's testimony evidences the fact that he has been caught in between two important companies in his industry. Mr. Stromatt is clearly attempting to both tell the true version of events (as he sees them) and not enrage either of the companies which play a large role in his business community.

In evaluating the reasonableness of a party's apprehension of litigation, there is a great

> need to look to substance rather than form . . . because in many
> instances . . . the parties are sensitive to the prospect of a
> declaratory judgment action and couch their exchanges in terms
> designed either to create or defeat declaratory judgment
> jurisdiction. In the end, the question is whether the relationship
> between the parties can be considered a 'controversy,' and that
> inquiry does not turn on whether the parties have used particular
> 'magic words' in communicating with one another.[56]

In this case, plaintiff's apprehension of litigation was reasonable in light of the totality and substance of defendants' actions. Defendants threatened EKF with litigation regarding the cuvettes imported and sold by plaintiff. Defendants strongly and consistently "warned" plaintiff's potential customer PSS that it would require indemnification to sell plaintiff's product. Defendants acquired all the assets of one of their competitors in the cuvette industry (Bio Test).

---

[54] Docket Entry 15, Exhibit 1.

[55] Docket Entry 15, Exhibit 1, at 39.

[56] EMC Corp. v. Norand Corp., 89 F.3d 807, 811-812 (Fed.Cir. 1996).

13

And, amidst all the actions they were taking to assert the viability of their patents and protect

their market share, defendants suspiciously warned all their employees not to mention possible

legal actions against Stanbio in particular. Defendants were "sensitive to the prospect of a

declaratory judgment action." They attempted to bully their competitors and potential clients, on

the one hand, and "couch their exchanges in terms designed" to "defeat declaratory judgment

jurisdiction" on the other.[57] Plaintiff has satisfied its burden of proving that its fear of litigation

was reasonable at the time it filed suit. For all these reasons, I recommend that defendants'

motion to dismiss be **DENIED**.

### VI. Recommendation

Based on the foregoing, it is my recommendation that defendants' motion to dismiss

(docket entry 6) be **DENIED**. Plaintiff has met its burden of establishing this court's jurisdiction

over the instant action as plaintiff has proven that an actual controversy existed between the

parties at the time the complaint was filed.

### VII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Report and Recommendation

on each and every party either (1) by certified mail, return receipt requested, or (2) by facsimile if

authorization to do so is on file with the Clerk. According to 28 U.S.C. § 636(b)(1) and FED. R.

CIV. P. 72(b), any party who desires to object to this report must serve and file written objections

to the Report and Recommendation within ten (10) days after being served with a copy unless

this time period is modified by the District Court. A party filing objections must specifically

identify those findings, conclusions, or recommendations to which objections are being made and

---

[57] Id.

14

the basis for such objections; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a de novo determination by the District Court.[58] Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within ten (10) days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[59]

SIGNED this _2_ day of September, 2004.

NANCY STEIN NOWAK
*United States Magistrate Judge*

---

[58] See Thomas v. Arn, 474 U.S. 140, 149-52 (1985); Acuña v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000), cert. denied, 530 U.S. 1229 (2000).

[59] Douglass v. United Servs. Auto. Ass'n., 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

RECEIVED
SEP 08 2004
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

EKF-DIAGNOSTIC SALES, GmbH, a
German Corporation,

Plaintiff,

v.

HEMOCUE AB, a Swedish Corporation;
and HEMOCUE, INC., a California
Corporation,

Defendants.

# SA04CA0807 XR

Civil Action No. _____

**COMPLAINT FOR
DECLARATORY JUDGMENT**

DEMAND FOR JURY TRIAL

The Plaintiff, EKF-diagnostic Sales, GmbH ("EKF Sales"), for its complaint against the

Defendants HemoCue AB and HemoCue, Inc., (sometimes collectively referred to herein as

"HemoCue"), states as follows:

## PARTIES AND NATURE OF ACTION

1.      EKF Sales is a German corporation, with its principal place of business at

Ebendorfer Chaussee 3, Technologie Park Ostfalen, D–39179, Barleben, Magdeburg, Germany.

EKF Sales is involved in the distributorship/supply of special hemoglobin meters for human use

and associated hemoglobin test cuvettes and accessories used with the meters.

2.      On information and belief, HemoCue AB is a corporation organized under the

laws of Sweden with its principal place of business at Box 1204SE-262 23 Angleholm, Sweden,

and is purportedly the owner of U.S. Patent Number 5,674,457 ("the '457 Patent"), entitled

"Capillary Microcuvette," purportedly issued on October 7, 1997. A copy of the '457 Patent is

attached as Exhibit A.

COMPLAINT FOR DECLARATORY JUDGMENT

AUSTIN:980000\30000\303\(2)v1

EXHIBIT C
PAGE 1 OF 11

SEP 13 2004 14:40 FR LOCKE LIDDELL & SAPP        T 4806*8533610002 P.04

3.    On information and belief, HemoCue, Inc., is a U.S. subsidiary of HemoCue AB and is a corporation organized under the laws of the state of California with its principal place of business at 40 Empire Drive, Lake Forest, California, 92630.

4.    On information and belief, HemoCue, Inc. is the exclusive licensee of the '457 Patent.

5.    This is an action for declaratory judgment that the '457 Patent is invalid and unenforceable and not infringed by EKF Sales, either directly or as an inducing or contributory infringer.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 2201 (declaratory judgment).

7.    This Court has personal jurisdiction over the Defendants because Defendants have sufficient contact with the state of Texas—in particular, this Judicial District—and maintenance of the suit in this Judicial District does not offend traditional notions of fair play and substantial justice. Venue is proper in this District pursuant to 28 U.S.C. § 1391. A substantial part of the Plaintiff's claims arise in this Judicial District.

## FACTS COMMON TO THE COUNTS

8.    EKF Sales is a sales entity which sells, among other things, hemoglobin meters and associated test cuvettes.

9.    Pursuant to an Agreement dated June 12, 2003, EKF Sales entered into an exclusive sales and distributorship agreement with a company by the name of Stanbio Laboratory, L.P. ("Stanbio"), for purposes of selling and distributing hemoglobin meters and test cuvettes throughout the United States of America.

10.    On information and belief, Stanbio is a limited partnership organized under the laws of the state of Texas, with its principal place of business at 1261 North Main Street, Boerne, Texas, 7806.

COMPLAINT FOR DECLARATORY JUDGMENT        - 2 -

EXHIBIT C
PAGE 2 OF 11

SEP 13 2004 14:41 FR LOCKE LIDDELL & SAPP      T 4605*3533610002 P.05

11.    On information and belief, Defendant HemoCue AB manufactures hemoglobin meters and test cuvettes in Sweden and then sells them throughout the United States, including in Texas and this Judicial District, through its U.S. subsidiary Defendant HemoCue, Inc.

12.    On information and belief, Defendants HemoCue AB and HemoCue, Inc. have attempted to assert rights under the '457 Patent against EKF-Diagnostic GmbH and against Plaintiff EKF Sales' U.S. distributor Stanbio, purportedly based upon allegations that the test cuvettes purchased from EKF Sales infringe the '457 Patent.

13.    EKF-Diagnostic GmbH is a holding company having its place of business in Germany. EKF-Diagnostic GmbH does not manufacture or sell products in the United States Furthermore, EKF-Diagnostic GmbH is not a party to any sales or distribution agreement with Stanbio.

14.    On information and belief, Stanbio filed a complaint on October 29, 2003 in U.S. District Court, Western District of Texas, San Antonio Division (Civil Action No. SA 03 CA. 1080 OG), seeking declaratory judgment that its offer for sale and sale of the cuvettes it purchases from Plaintiff EKF Sales do not infringe the '457 Patent, that the '457 Patent is invalid, and that Stanbio's sale and offering for sale of such products is lawful.

15.    On information and belief, on July 13, 2004, Defendants filed a Motion to Dismiss Civil Action No. SA 03 CA 1080 (OG) for lack of subject matter jurisdiction alleging Stanbio's lack of a reasonable apprehension of being sued by HemoCue.

16.    On information and belief, Civil Action No. SA 03 CA 1080 (OG) is still pending in the U.S. District Court, Western District of Texas, San Antonio Division.

17.    On information and belief, on July 9, 2004, Defendants filed a complaint in U.S. District Court, Southern District of California (Case No. 04 CV 1378 BEN (AJG)), alleging that both Stanbio and EKF-Diagnostic GmbH (not EKF Sales) infringe the '457 Patent. It is believed that the Defendants inadvertently named the wrong "EKF" entity. Regardless, neither EKF entities have any contact with the state of California.

COMPLAINT FOR DECLARATORY JUDGMENT          - 3 -

AUSTIN:980000/30000303/2/v1

EXHIBIT C
PAGE 3 OF 11

SEP 13 2004 14:41 FR LOCKE LIDDELL & SAPP          T   4806*3533610002 P.06

18.    On information and belief, EKF-diagnostic GmbH has never been formally served with HemoCue's complaint in Case No. 04 CV 1378 BEN (AJG).

19.    As a result of Defendants' complaint filed in California against the "wrong" EKF entity, albeit against the "correct" EKF ("EKF Sales") distributor Stanbio, EKF Sales has a reasonable fear and apprehension that Defendants HemoCue will commence an action for patent infringement of the '457 Patent against it in the United States. Accordingly, an actual existing and bona fide justiciable controversy therefore exists between EKF Sales, HemoCue AB, and HemoCue, Inc. concerning the '457 patent, including its scope and its validity.

20.    On information and belief, the '457 Patent relies upon the wrong science for supporting capillary force. As such, the '457 Patent fails to provide sufficient disclosure commensurate in scope to its claims to enable one of ordinary skill in the art to practice the alleged invention.

21.    On information and belief, Defendants HemoCue failed to disclose to the U.S. Patent and Trademark Office at least one of its own product's literature/specifications as prior art material to the patentability of the '457 Patent.

22.    On information and belief, Defendants HemoCue knew that Plaintiff EKF Sales' products rely on the teachings of at least one of Defendants HemoCue's earlier, not in force, patents.

## COUNT I

### Declaratory Judgment For Non-Infringement

23.    EKF Sales repeats and realleges each and every allegation of paragraphs 1 through 22 as though fully set forth herein.

24.    EKF Sales seeks a declaratory judgment that the cuvettes it provides to Stanbio do not infringe the invention claimed in the '457 Patent.

COMPLAINT FOR DECLARATORY JUDGMENT          - 4 -

AUSTIN:980000.30000.3053:25v1

EXHIBIT C
PAGE 4 OF 11

## COUNT II

### Declaratory Judgment For Invalidity

25.    EKF Sales repeats and realleges each and every allegation of paragraphs 1 through 24 as though fully set forth herein.

26.    EKF Sales seeks a declaratory judgment that the '457 Patent is invalid.

## COUNT III

### Declaratory Judgment For Lawful Sale And Offering To Sell

27.    EKF Sales repeats and realleges each and every allegation of paragraphs 1 through 26 as though fully set forth herein.

28.    EKF Sales seeks a declaratory judgment that its sale and offering to sell its products is lawful.

## COUNT IV

### Exceptional Case

29.    EKF Sales repeats and realleges each and every allegation of paragraphs 1 through 28 as though fully set forth herein.

30.    This matter is an exceptional case, and pursuant to 35 U.S.C § 285, EKF Sales seeks to recover its reasonable attorney's fees expended in this action.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, EKF-Sales, requests judgment against Defendants for the following:

A.    Judgment that EKF Sales' cuvettes do not infringe U.S. Patent No. 5,674,457;

B.    Judgment that U.S. Patent No. 5,674,457 is invalid;

C.    Judgment that EKF Sales' sale and offering to sell its cuvettes is lawful;

COMPLAINT FOR DECLARATORY JUDGMENT        - 5 -

AUSTIN:980000/300X0:203010v1

EXHIBIT C
PAGE 5 OF 11

D.    Judgment that this case is exceptional within the meaning of 35 U.S.C. § 285 and award EKF Sales its attorney's fees, costs, and expenses that it incurs in prosecuting this action; and

E.    Provide any further relief as this Court may deem equitable and proper.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable to a jury.

Dated:  September 8, 2004

Respectfully submitted,

LOCKE LIDDELL & SAPP LLP

By: _____
    John K. Schwartz
    State Bar No. 17865325
    100 Congress Ave., Suite 300
    Austin, Texas 78701
    (512) 305-4700
    (512) 305-4800 (Facsimile)

ATTORNEYS FOR PLAINTIFF
EKF-DIAGNOSTIC SALES GmbH

OF COUNSEL:

Jody L. Factor
Joseph M. Kinsella Jr.
FACTOR & LAKE, LTD.
1327 W. Washington Blvd., Suite 5G/H
Chicago, IL 60607
(312) 226-1818 Telephone
(312) 226-1919 Facsimile

COMPLAINT FOR DECLARATORY JUDGMENT    - 6 -

AUSTIN:980000/30000:303010v1

EXHIBIT C
PAGE 6 OF 11

US005674457A

# United States Patent [19]

## Williamsson et al.

[11]  Patent Number:  **5,674,457**

[45]  Date of Patent:  **Oct. 7, 1997**

[54]  **CAPILLARY MICROCUVETTE**

[75]  Inventors: **Anders Williamsson**, Helsingborg; **Stefan Wahlqvist**, Lomma; **Sven-Erik Nilsson**; **Jan Lilja**, both of Helsingborg; **Lars Jansson**, Ängelholm; **Bertil Nilsson**, Bjärred, all of Sweden

[73]  Assignee: **Hemocue AB**, Ängelholm, Sweden

[21]  Appl. No.: **429,494**

[22]  Filed:  **Apr. 26, 1995**

[51]  Int. Cl.$^6$ ........................................ **B01L 3/00**

[52]  U.S. Cl. ................... **422/102; 422/104; 422/99; 356/246**

[58]  Field of Search ................... 422/99, 100, 102, 422/104; 356/246, 440

[56]  **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,015,949 | 10/1935 | Maw | 356/246 |
| 2,056,791 | 10/1936 | Logan | 356/246 |
| 2,059,374 | 11/1936 | Logan et al. | 356/246 |
| 2,062,587 | 12/1936 | Logan et al. | 356/246 |
| 2,062,588 | 12/1936 | Logan et al. | 356/70 |
| 2,069,374 | 2/1937 | Lagomarsino | 62/298 |
| 3,363,503 | 1/1968 | Shifrin | 356/246 |
| 3,501,242 | 3/1970 | De Mey, II et al. | 356/246 |
| 3,565,537 | 2/1971 | Fielding | 356/246 |
| 3,698,822 | 10/1972 | Palanyi | 356/246 |
| 3,705,000 | 12/1972 | Guerra | 356/246 |
| 3,814,522 | 6/1974 | Clark et al. | 356/197 |
| 4,088,448 | 5/1978 | Lilja et al. | 422/102 |
| 4,088,488 | 5/1978 | Chang et al. | 96/29 D |
| 4,405,235 | 9/1983 | Rossiter | 356/246 |

| | | | |
|---|---|---|---|
| 4,596,695 | 6/1986 | Cottingham | 422/58 |
| 4,746,215 | 5/1988 | Gross | 356/339 |
| 4,756,884 | 7/1988 | Hillman et al. | 422/73 |
| 4,761,381 | 8/1988 | Blatt et al. | 436/165 |
| 4,865,812 | 9/1989 | Kaniz et al. | 422/99 |
| 4,957,582 | 9/1990 | Columbus | 156/332 |
| 4,981,654 | 1/1991 | Kaniz et al. | 422/102 |
| 5,030,421 | 7/1991 | Muller | 422/102 |
| 5,147,607 | 9/1992 | Mochida | 422/57 |
| 5,260,032 | 11/1993 | Muller | 422/102 |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 0 287 883 | 10/1988 | European Pat. Off. . |
| 2-17426 | 1/1990 | Japan . |

### OTHER PUBLICATIONS

"An Azide–Methemoglobin Method for Hemoglobin Determination in Blood", Guilio Vanzetti, J. Lab. & Clin. Med., vol. 67, No. 1, pp. 116–126, Jan. 1966.

*Primary Examiner*—Harold Pyon
*Attorney, Agent, or Firm*—Burns, Doane, Swecker & Mathis, L.L.P.

[57]  **ABSTRACT**

The present invention is related to an integral capillary microcuvette comprising a body member and a cavity including a measuring zone within the body member. The cavity is defined by two opposite, substantially parallel inner surfaces of the body member and includes an outer peripheral edge comprising a sample inlet and an inner peripheral zone having a channel of higher capillary force than the measuring zone. The channel extends around the entire inner peripheral zone with ends of the channel communicating with the atmosphere at the exterior of the microcuvette.

**7 Claims, 2 Drawing Sheets**





EXHIBIT C
PAGE 7 OF 11

**U.S. Patent**          Oct. 7, 1997          Sheet 1 of 2          **5,674,457**



FIG. 1



FIG. 2

EXHIBIT C
PAGE 8 OF 11

**U.S. Patent**          Oct. 7, 1997          Sheet 2 of 2          5,674,457



FIG. 3



FIG. 4

EXHIBIT C
PAGE 9 OF 11

5,674,457

**1**

## CAPILLARY MICROCUVETTE

### BACKGROUND OF THE INVENTION

The present invention concerns a capillary microcuvette. More specifically the invention concerns a disposable integral capillary microcuvette having improved flow for essentially simultaneously sampling a fluid and analyzing the sample.

A cuvette for sampling a fluid, mixing the sample with a reagent and directly making optical analysis of the sample mixed with the reagent is previously known from U.S. Pat. No. 4,088,448. This cuvette comprises a body member including two planar surfaces defining an optical path and placed at a predetermined distance from one another to determine the optical path length and to define a cavity which includes a measuring zone therein, having an inlet for communicating said cavity with the exterior of the body member. The cavity has a predetermined fixed volume, and the predetermined distance permits the sample to enter the cavity by capillary force. Furthermore, a reagent is coated on the cavity surface, which mixes with the sample and allows the sample to be measured by optical analysis.

This known cuvette has several advantages when compared with the conventionally used devices. It permits sampling of a liquid, mixing and chemically reacting it with a suitable reagent; e.g. for colour development, in the same vessel as the one used for the subsequent measurement. The cuvette disclosed in U.S. Pat. No. 4,088,448 thus simplifies the sampling procedure, reduces the number of devices needed and in most cases, depending on the type of analysis, considerably improves the accuracy of the analysis by making the analyzing procedure independent of the operation of the device.

However, it has been discovered that the microcuvette described in U.S. Pat. No. 4,088,448 may develop air bubbles that can interfere with the optical analysis. Air bubbles generally form in the cavity of the cuvettes because of unsatisfactory sample flow in the cuvette cavity. This is especially detrimental for hemoglobin measurements because of the strong absorption of the hemoglobin. In particular, in a photometric determination, the presence of a large air bubble in the light path traversing the measuring zone will result in an overall measured hemoglobin value below the actual level because the photometer will read the bubble as a contribution of extremely low hemoglobin. Quality control is routinely carried out to discard those cuvettes which include air bubbles, thereby eliminating the risk that air bubbles will be present in the measuring zone when the cuvettes are used in a clinical procedure. A considerable number of cuvettes do not pass the quality control and have to be discarded, thereby increasing the overall cost of the cuvettes.

### OBJECT OF THE INVENTION

One object of the present invention is to provide an improved cuvette which eliminates the risk of failure caused by the presence of air bubbles in the measuring zone.

### SUMMARY OF THE INVENTION

The above objects and others are accomplished by providing a disposable, integral capillary microcuvette for essentially simultaneously sampling a fluid and analyzing the sample. In connection with the present invention the term "integral" means that the cuvette is made or manufactured in

**2**

one, integral, piece. The microcuvette comprises a body member and a cavity including a measuring zone within the body member. The cavity is defined by two opposite, substantially parallel inner surfaces of the body member and includes an outer peripheral edge comprising a sample inlet and an inner peripheral zone having a channel of higher capillary force than the measuring zone. The channel extends around the entire inner peripheral zone with ends of the channel communicating with the exterior of the microcuvette.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a plan view of the microcuvette according to one embodiment of the present invention.

FIG. 2 is a cross sectional view of a microcuvette according to the present invention, taken along line II—II of FIG. 1.

FIG. 3 is a perspective view of the microcuvette according to the invention.

FIG. 4 is a cross-sectional view of a microcuvette according to another embodiment of the present invention.

### DETAILED DESCRIPTION OF THE INVENTION

FIG. 1 is a plan view of a microcuvette generally designated by reference numeral 1, according to one embodiment of the present invention. The microcuvette 1, comprises a body member 2, comprised of two substantially planar sheets of material 11, 12, and includes a cavity 3, defined by two inner surfaces 5, 6, of the body member 2. A measuring zone 4 is arranged within the cavity 3. The distance between the surfaces 5, 6, defining the measuring zone 4, is a critical parameter in providing the proper optical path length for the desired measurement. In a preferred embodiment of measuring hemoglobin, the distance should be between 0.05 and 0.15 mm. The distance between the inner surfaces of the rest of the cavity 3 is preferably in the order of 0.3–2 mm, i.e. clearly longer than the distance between the inner surfaces 5, 6 of the measuring zone. An outer peripheral edge 7, includes a sample inlet 8, comprised of the opening between the two sheets 11, 12, making up the body member 2. An inner peripheral zone 9, includes a channel 10, which has a higher capillary force than the measuring zone 4. The channel 10, which can have any shape, extends along the entire inner peripheral zone 9, and communicates with the atmosphere at both ends of the channel 10. The channel 10, preferably has a width between 10 micron and 2 mm.

When a sample liquid is drawn into the cuvette through the inlet 8, the channel 10 is filled along its entire length due to its high capillary action. After filling of the channel the sample liquid propagates into the rest of the cavity 3 in a flow pattern which prevents air bubbles to be captured in the measuring zone 4.

The provision of the channel having a higher capillary force than the measuring zone thus improves hydrodynamic flow within the cuvette cavity and prevents air bubbles to be trapped in the measuring zone. The channel may have any appropriate shape or form as long as the capillary force of the channel is higher than the capillary force of the measuring zone. This is accomplished by providing a channel having a depth which is less than that of the measuring zone. In particular, the channel may be defined by an inner wall of the inner peripheral zone and by the two opposite, substantially planar, surfaces of the body member whereby the distance between the planar surfaces of the channel is

EXHIBIT C
PAGE 10 OF 11

5,674,457

| 3 | 4 |

shorter than the distance between the inner surfaces of the measuring zone as shown in FIG. 3.

In an alternative embodiment of the present invention, the distance between the two opposite substantially planar surfaces of the body member continuously increases in a direction extending away from the inner end wall of the inner peripheral zone. In this case the channel is shaped as a wedge, the bottom of which opens towards the measuring zone.

The cuvettes according to the present invention may be formed from any suitable material which allows the formation of the channel and measuring zone to the necessary tight tolerance levels. Preferably, the cuvettes according to the present invention are made of glass or a polymeric material.

Cuvettes according to the present invention were compared with cuvettes according to U.S. Pat. No. 4,088,448 as follows:

A reagent of

40 g sodium desoxycholate

18 g sodium azid and

20 g sodium nitrite

per liter solvent was prepared.

100 cuvettes according to U.S. Pat. No. 4,088,448 available from HemoCue AB, Sweden, and 100 cuvettes according to the present invention were filled with the above reagent, air dried and examined optically for uniform drying pattern. The cuvettes were then filled with whole blood, EDTA and an anticoagulating agent. A hemoglobin measurement was then carried out according to a modified azidmethemoglobin method according to Vanzetti described in J. Lab. Clin. Med. 67, 116–26 (1966) wherein the measurement is made at 570 and 880 nm respectively. The number of cuvettes which exhibited air bubbles was recorded.

| Type of Cuvette | Number with air bubble |
|---|---|
| U.S. Pat. No. 4,088,448 | 25 |
| The invention | 0 |

As is apparent from the above, the cuvettes according to the present invention are very advantageous in eliminating the risks associated with the occurrence of air bubbles within the measuring zone. By providing the cuvette according to the present invention with a channel having higher capillary force than that of the measuring zone, air bubbles were entirely eliminated. This not only reduced the costs associated with discarded cuvettes but also greatly reduces the risk of improper readings which occur because of air bubbles.

The present invention has been described above with respect to the measurement of hemoglobin. However, the present invention is equally applicable to the measurement of other blood chemistry values, such as glucose, blood urea nitrogen, albumin, bilirubin, and total protein, etc. Furthermore, the present invention is applicable to numerous other analytical measurements and tests outside the blood chemistry field.

The foregoing has been a description of certain preferred embodiments of the present invention, but it is not intended to limit the invention in any way. Rather, many modifications, variations, and changes in details may be made within the scope of the present invention.

What is claimed is:

1. An integral capillary microcuvette comprising a body member having an outer peripheral edge, the body member being provided with a cavity that communicates with the outer peripheral edge of the body member, the cavity being defined by two opposing inner surfaces of the body member, a portion of the cavity defining a measuring zone within the body member, the cavity having an inner peripheral zone at which is located a channel, the channel extending along the entire inner peripheral zone of the cavity, the channel being sized relative to the measuring zone such that the channel has a higher capillary force than the measuring zone to prevent air bubbles from becoming trapped in the measuring zone, the outer peripheral edge of the body member being provided with a sample inlet through which a sample is drawn into the body member, the sample inlet being in communication with the channel and the channel being in communication with the measuring zone.

2. A microcuvette according to claim 1, wherein said cavity has a predetermined volume.

3. A microcuvette according to claim 1, wherein said cavity includes a dry reagent in a predetermined amount.

4. A microcuvette according to claim 1, wherein the distance between the inner surfaces of the body member at said measuring zone does not exceed 0.15 mm.

5. A microcuvette according to claim 1, wherein said channel is defined by an inner end wall at said inner peripheral zone and two substantially planar portions of the inner surfaces of said body member.

6. A microcuvette according to claim 5, wherein said two substantially planar portions are parallel and the distance between the two substantially planar portions is less than the distance between portions of the inner surfaces of the body member at said measuring zone.

7. A microcuvette according to claim 5, wherein the distance between the two substantially planar surfaces of said body member increases in a direction extending away from said inner end wall of said inner peripheral zone.

*  *  *  *  *

EXHIBIT C
PAGE 11 OF 11



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STANBIO LABORATORY, L.P., | § | |
| *A Texas Limited Partnership* | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No.  SA03CA1080(OG) |
| HEMOCUE, INC. and | § | |
| HEMOCUE AB | § | |
| Defendants. | § | |

## AFFIDAVIT OF BERTHOLD WALTER

On this day, Berthold Walter appeared before me, the undersigned notary public. After I administered an oath to him, upon his oath, he said:

1.    My name is Berthold Walter. I am over the age of twenty-one years and of sound mind, capable of making this affidavit and fully competent to testify to the matters stated herein. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.    I am General Manager of EKF-Diagnostic GROUP ("EKF"). EKF diagnostic production is a manufacturer and EKF-diagnostic sales distributor of medical devices, including hemoglobin microcuvettes.

3.    HemoCue AB is also a manufacturer of medical devices, including hemoglobin microcuvettes. HemoCue AB owns United States Patent No. 5,674,457 (the '457 patent) and corresponding patents in other countries.

4.    The e-mail attached as Exhibit "1" is an accurate copy of the content of an e-mail I received on or about 23 September 2003, from Clas Runnberg. (The format of the 23 September

EXHIBIT D
PAGE 1 OF 3

2003 e-mail in Exhibit "1" is slightly different than as originally received.)  Clas Runnberg is employed by HemoCue AB.  The Exhibit "1" e-mail confirms the following facts, which are true:

      a.    I had a telephone conversation with Mr. Runnberg prior to 23 September 2003, in which Mr. Runnberg and I discussed the fact that EKF was making preparations for entering the U.S. market with EKF's hemo_control HB cuvette.

      b.    Mr. Runnberg stated <u>at least</u> words to the effect that, "should your entry into the U.S. reach a point where it could constitute an infringement of HemoCue's patent rights, we [HemoCue] will take all steps necessary and relevant to protect our rights . . . ."

      c.    Mr. Runnberg stated <u>at least</u> words to the effect that HemoCue was "following the situation in other countries closely and may find that we [HemoCue] also need to take similar measures in those countries."

      5.    While these above topics of EKF selling hemoglobin microcuvettes into the United States and infringement of Hemocue's patent rights and Hemocue taking steps to protect its patent rights were discussed , Mr. Runnberg was more direct and less diplomatic in our conversation than in his e-mail. Mr. Runnberg said (a) EKF's microcuvettes likely infringed HemoCue's patents and (2) HemoCue would likely sue United States sellers of EKF's microcuvettes for such patent infringement, and (c) HemoCue did not want HemoCue's upcoming likely patent infringement lawsuit against United States sellers of EKF's microcuvettes to interfere with other possible business relationships between HemoCue and EKF.

      6.    Although HemoCue knows EKF believes HemoCue will likely file patent infringement suits against sellers of EKF's microcuvettes in the United States, HemoCue has not advised EKF either that EKF's microcuvettes do not infringe or that HemoCue will not sue sellers of EKF microcuvettes for patent infringement.

EXHIBIT D
PAGE 2 OF 3

7.    I communicated the above facts to William Pippin of Stanbio prior to October 29, 2003.

8.    The attached letter of 9 October 2003, together with its attached copy of the '457 patent (collectively attached as Exhibit "2") is an accurate copy of the letter and attachment that I sent to William Pippin of Stanbio on or about 9 October 2003. My statements in my 9 October 2003 letter to the effect that "It is a fact that HemoCue will take proceedings against Stanbio. The reason is the enclosed patent" were based on the totality of HemoCue's actions and communications, including my above conversation with Mr. Runnberg and his e-mail to me.

9.    Based on HemoCue's actions and communications, I believed in the fall of 2003 that HemoCue would likely sue Stanbio for allegedly infringing the '457 patent. Based on HemoCue's actions and communications In the fall of 2003 it was reasonable for Stanbio to expect HemoCue to sue Stanbio for allegedly infringing the '457 patent.

Further Affiant sayeth not.

_____
Berthold Walter

SUBSCRIBED and SWORN TO before me by Berthold Walter on this _27_ day of _January_, 2004, to certify which, witness my hand and official seal of office.

3512069/124716



_____

Dietmar Karlowski